Pile *v.* McBratney et al.

DANIEL PILE, Appellant, *v.* JOHN McBRATNEY et al., Appellees.

## APPEAL FROM ADAMS.

A certificate which declares that an advertisement was published "for four successive weeks, the first publication having been made on the 8th day of March, 1850," will, in a chancery proceeding against unknown persons, &c., confer jurisdiction on the court; although said certificate proceeds to state, "and the last on the 26th of April, 1850;" the inference will be, that the certificate was published eight weeks, and in a collateral proceeding, the presumption would be that the court had other evidence that publication was duly made.

An affidavit filed with a bill which states that the defendants, except one, heirs, &c. and persons unknown, are interested in the suit, are non-residents, &c., with an advertisement in due form, will give the court jurisdiction, as fully as if the defendants had been before the court by their proper names.

A plaintiff need not prove that a deceased person has left heirs, nor need he prove who are such heirs.

A judgment or decree is *primâ facie* evidence against third persons of a fact that was necessarily found thereby; as where such fact may be established by proof of general reputation.

THIS cause was heard by the court, SKINNER, Judge, presiding, at March term, 1853, of the Adams Circuit Court.

WILLIAMS and LAWRENCE, and WARREN & EDMONDS, for appellant.

BROWNING and BUSHNELL, for appellees.

TREAT, C. J. This was an action of ejectment, brought by Daniel Pile against John and Hugh McBratney, to recover the possession of the south-west quarter of section 25, township .e north, range five west, in Adams county.

It was admitted on the trial, that the defendants were in possession of the premises when the suit was commenced. The plaintiff read in evidence a patent for the premises from the United States to Carr Mastin, dated October 13, 1817; also a deed of the same from John Sample to the plaintiff, dated February 6, 1849; and a deed of the same to the plaintiff, dated October 29, 1850, made by George Edmunds, Jr., as special commissioner appointed by the Adams circuit court in a suit in chancery, in which the plaintiff was complainant, and John Sample and the unknown heirs of Carr Mastin were defendants. In connection with this deed, the plaintiff introduced the proceedings in the chancery suit.

The bill was filed in January, 1850, and it alleged that Carr Mastin, on the 1st of May, 1818, for a valuable consideration, sold the premises to John Sample, and with the intent and for the purpose of conveying the same to him in fee, executed an instrument in these words:—

"Know all men by these presents, that I, Carr Mastin, have this day sold to John Sample, his heirs and assigns for ever, that parcel or quarter section of land, lying and being in the Military Bounty in the territory of Illinois, a certain tract of land, containing one hundred and sixty acres, the south-west quarter of section 25, of township one north, in range five west, to have and to hold with all the appurtenances thereunto belonging, for value received of him this first day of May, 1818.

CARR MASTIN.

Witness present, John Van Curen.

Signed, sealed, and delivered before me, Joseph Sealey, justice of the peace for the county of Hamilton, and State of Ohio.

JOSEPH SEALEY, J. P."

The bill then set forth the conveyance from Sample to the complainant, and alleged that Mastin was dead; that the names of his heirs were unknown, and that other persons were interested in the premises whose names were also unknown. It made Sample, John McBratney, "the unknown heirs of Carr Mastin, deceased," and "persons unknown," defendants; and concluded with the prayer that the defendants might be compelled to convey the premises to the complainant.

An affidavit was filed with the bill in these words:—

"I, Daniel Pile, do swear that the said defendants, heirs of Carr Mastin, deceased, and persons unknown, are interested in this suit, and that the names of such persons unknown and heirs of said Carr Mastin, are unknown to affiant; and that said defendants, except John McBratney, are non-residents of this State, as I am informed and believe." The affidavit was properly entitled and verified.

A summons was issued, returnable on the second Monday of May, on which the sheriff made return of service on McBratney, and "not found" as to the other defendants.

The notice of the pendency of the suit, with a proper heading, was as follows:—

"It appearing by affidavit on file in the office of the clerk of the circuit court of said county, that the said defendants, heirs of Carr Mastin, deceased, and persons unknown, are interested

Pile *v.* McBratney et al.

in this suit, and that the names of such persons unknown, and heirs of said Carr Mastin are unknown, and that all of said defendants, except John McBratney, are non-residents of the State of Illinois : Notice is hereby given to them that a bill in chancery has been filed in said clerk's office against them by said Daniel Pile; that a subpœna in chancery has been issued thereon, returnable to the May term, 1850, of said circuit court; and that unless they shall be and appear before the said circuit court of said county, on the first day of the next term thereof, to be holden at the court house in Quincy, on the second Monday of May next, and answer the complainant's said bill of complaint, the allegations thereof will be taken for confessed against them, and a decree entered according to the prayer of said bill.

PETER LOTT, Clerk."

The certificate of publication was as follows : —

" The undersigned, publisher of the Quincy Herald, a weekly newspaper printed and published at Quincy, Adams county, Illinois, do certify that the annexed advertisement was published in said paper for four successive weeks, the first publication having been made on the 8th day of March, 1850, and the last on the 26th of April, 1850.

A. BROOKS, Publisher and Proprietor.

Quincy, Illinois, May 17, 1850."

At the May term, 1850, the bill was taken for confessed against all of the defendants but McBratney. On the 15th of July, 1850, the complainant's solicitor made affidavit, that none of the defendants, except McBratney, resided in this State, or had an attorney residing therein ; and that on the 13th of that month, he posted on the door of the court house a copy of the notice to take depositions of witnesses, and of the interrogatories to be propounded to them.

On the 13th of August, 1850, a *dedimus* issued to a justice of the peace of the State of Iowa, by virtue of which the deposition of John Sample was regularly taken and returned. He testified in substance, that he became acquainted with Carr Mastin in Hamilton county, Ohio, during the last war with Great Britain ; he served one year in the army, and received the patent on account of his services ; he returned to Hamilton county, and lived with witness till May, 1818; witness purchased the premises from Mastin for $150, and received from him the patent, and the writing set out in the bill; the writing was intended to be an absolute conveyance of the land; in May, 1818, Mastin left Ohio for the south, in company with

Joseph Sealey, who returned in about two months, and reported that Mastin died in New Orleans; witness had not since heard of Mastin, and all his former acquaintances considered him dead; before his deposition was taken, the witness was released from all liability on the covenants contained in his deed to the complainant.

At the October term, 1850, the complainant dismissed the bill as to McBratney; and a decree was thereupon entered, appointing a commissioner to convey to the complainant all the right and title, that Carr Mastin had in the premises on the 1st of May, 1818.

On the foregoing state of facts, the court rendered judgment in favor of the defendants, and the plaintiff prosecuted an appeal.

The patentee sold the premises to Sample, and received full payment of the purchase-money. But the attempt to pass the title was ineffectual. The instrument needed one of the essential requisites of a deed. It was not under seal. The legal estate still remained in Mastin. Sample acquired only an equitable title to the land, and he transferred nothing more to the plaintiff. The object of the chancery suit was to unite both these interests in the plaintiff. The provisions of the statute under which that proceeding was had, are these. "In all suits in chancery, and suits to obtain title to lands, in any of the courts of this State, if there be persons interested in the same, whose names are unknown, it shall be lawful to make such persons parties to such suits or proceedings, by the name or description of persons unknown, or unknown heirs or devisees of any deceased person, who may have been interested in the subject-matter of the suit previous to his or her death; but in all such cases an affidavit shall be filed by the party desiring to make any unknown person a party, stating that the names of such persons are unknown, and process shall be issued against all parties, by the name and description given as aforesaid, and notices given by publication, as is required in section eight of this chapter, shall be sufficient to authorize the court to hear and determine the suit, as though all parties had been sued by their proper names. All decrees, orders, judgments, and proceedings, made or had with respect to such unknown persons, shall have the same effect, and be as binding and conclusive upon them, as though such suit or proceedings had been instituted against them by their proper names." R. S. ch. 21, §§ 41 and 42. The eighth section of the same chapter, as respects non-resident defendants, requires the clerk to "cause publication to be made in some newspaper printed in his county, and if

27*

there be no newspaper published in his county, then in a newspaper published in this State, containing notice of the pendency of such suit, the names of the parties thereto, the title of the court, and the time and place of the return of summons in the case; such publication to be made for four successive weeks, the first of which shall be at least sixty days before the return day of such summons."

It was insisted on the argument, that the printer's certificate was insufficient, and therefore that the court had no jurisdiction to pronounce the decree against the unknown heirs of Mastin. We think the certificate shows that publication was made in the manner prescribed by the statute. It states that the advertisement was published " for four successive weeks, the first publication having been made on the 8th day of March, 1850." This was clearly sufficient to confer jurisdiction on the court. It shows that the requirement of the statute was complied with. The certificate then proceeds to state, "and the last on the 26th of April, 1850." But this is not inconsistent with the former statement. It does not contradict what is previously stated, but merely states something more. The inference from the whole certificate is, that the notice was published for eight weeks. Surely, that would not defeat the jurisdiction of the court. Even if the certificate was defective, the presumption would be, in this collateral proceeding, that the court had other evidence before it that the publication was duly made. The 21st ch. R. S. does not prescribe any mode of making the proof. The 3d ch. R. S. provides that the printer's certificate shall be sufficient evidence of the publication. It does not, however, exclude any other mode of proof. It is competent to prove the publication by other evidence. The interlocutory decree stated, that " the complainant made due proof of publication of notice of the pendency of this suit." That proof may have embraced other evidence than the certificate in question. If necessary, this court would presume that other evidence was adduced. And the case of Pierce *v.* Carleton, 12 Illinois, 358, would be an authority in point.

The affidavit and advertisement were sufficient to give the court jurisdiction of the persons of the defendants. They contained all that the statute required. The affidavit stated that the heirs of Mastin were interested in the subject-matter of the suit, and that their names were unknown to the plaintiff. That was enough to authorize them to be proceeded against as " the unknown heirs of Carr Mastin." It authorized process to issue against them by that description, and notice to be given them as in the case of non-resident defendants. The advertisement

Pile *v.* McBratney et al.

apprised them of the bringing of the suit, the court in which the same was pending, the name of the parties, and the time and place when the summons was returnable.   On the return of the summons, and the publication of the notice, the heirs of Mastin were as much before the court, and the court was as much authorized to hear and determine the case, as if the proceedings had been against the heirs by their proper names.

The testimony of Sample was properly taken.   The statute authorizes a party to sue out a *dedimus* to take the deposition of witnesses, where neither the adverse party nor his attorney resides in this State, by posting notice thereof on the door of the court house, at least four weeks before the *dedimus* issues. R. S. p. 580.   This provision was strictly pursued by the plaintiff.

The court having acquired jurisdiction of the case, and passed upon the rights of the parties, the decree was binding on the heirs of Mastin.   The deed of the commissioner transferred all of their interest in the land.   The legal and equitable titles were then combined in the plaintiff.

It was not incumbent on the plaintiff to prove on the trial of this case, that Mastin left heirs whose title was divested by the proceedings in chancery.   The legal presumption in this State is, that a deceased person leaves heirs capable of inheriting his estate.   Hervey *v.* Thornton, 14 Illinois, 217.   Nor was the plaintiff bound to prove who were the heirs of Mastin.   To require that to be done, would defeat the object of the statute, and render it practically inoperative.   If a party could not avail himself of a decree obtained under its provisions, without proving who were the heirs of the deceased person, the statute would be useless, and the remedy ineffectual.   If it could be proved who were the heirs, they would not be unknown.

The record of the chancery proceeding was evidence against the defendants of the death of Mastin.   It is true as a general rule, that a judgment or decree only binds parties and privies; and that, as against strangers, the record is only evidence of the fact that the judgment or decree has been pronounced, and of the legal consequences resulting from that fact.   But there is a class of cases, in which a judgment or decree is *primâ facie* evidence against third persons of a fact that was necessarily found thereby.   Where a fact may be established by proof of general reputation, such as custom, prescription, pedigree, or the like, the record of a judgment or decree finding the same fact, is *primâ facie* evidence thereof against third persons.   The solemn · adjudication of a court upon testimony, is justly regarded as stronger proof of the fact, than mere evidence of gen-

eral reputation. 1 Starkie on Evidence, p. 251; 1 Greenleaf on Evidence, § 555. This case falls clearly within this principle. It is competent to prove by general reputation that a person is dead. The decree against the unknown heirs could not have been made, without proof of the death of Mastin. That is a fact upon which the decree necessarily rests. The deposition of Sample sufficiently established the death of Mastin.

On the evidence before the court, the plaintiff was entitled to recover. The judgment will be reversed, and the cause remanded.

*Judgment reversed.*